UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE A CREED,

        Plaintiff,                     CIVIL ACTION NO. 05 CV 71875 DT

     v.                                 DISTRICT JUDGE MARIANNE O. BATTANI

JO ANNE B. BARNHART,              MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

The Plaintiff, Bruce A. Creed, brings this appeal of the Agency's decision denying him Social Security disability insurance benefits before the federal district court. Plaintiff claims defendant's decision, as determined by the administrative law judge (ALJ), is not supported by substantial evidence on the record as a whole and that the ALJ's legal conclusions are contrary to the applicable statutes, regulations and case law. There is no dispute as to Plaintiff's physical limitations resulting from a back injury, the only remaining contested issue is whether or not Plaintiff is illiterate under the Social Security Regulations. For the reasons discussed in this Report, it is recommended that the defendant's motion requesting summary judgment be granted, Plaintiff's motion be denied, and the decision denying disability benefits be affirmed.

II. **LEGAL STANDARDS**

    A. **Disability Evaluations**

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see also 42 U.S.C. § 1382c(a)(3)(C)(I). The claimant bears the burden of providing that he is disabled. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB and SSI claims. 20 C.F.R. § 404.1520, 20 C.F.R.§ 416.920. As discussed in *Foster, Id.* at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

> The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B. Illiteracy Standards

The regulations in 20 CFR 404.1564 set forth the definition of illiteracy:

> Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has little or no formal schooling.
>
> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. Thus, the functional capability for sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for younger individuals even if they are illiterate or unable to communicate in English."

(Appendix 2 to Subpart P of Part 404—Medical-Vocational Guidelines (4)(i)).

### C. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioners of Social Security may after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989); *Key v Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in *Brainard*, 889 F.3d at 681, that

"[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."  *Key*, 109 F.3d at 273.

The substantial evidence standard used here demands considerable deference to be afforded to the decision made by the ALJ.  "It presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."  *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984), *quoted in Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986).  Even if this court might arrive at a different factual conclusion, the prior decision from the ALJ must be affirmed if it is supported by substantial evidence.  *Siterlet v. Secretary of HHS,* 823 F.2d 918, 920 (6th Cir. 1987).

### III.  FACTUAL AND PROCEDURAL BACKGROUND

#### A.  Procedural History

Plaintiff first filed an application for Social Security Disability Insurance Benefits in 1991 due to a severe back injury.  (Tr. 118)  He attended two hearings in front of ALJ John LaFalce, the first in August of 1992 and the second in March of 1993.  (Tr. 23-54, 55-80)  Plaintiff was denied benefits through the entire application process, and because he did not appeal the district court's decision, the ALJ's determination that Plaintiff was not disabled through March 24, 1993 should be given the effect of *res judicata* claim preclusion.  (Tr. 450)

Plaintiff filed for benefits again on October 7, 1994.  (Tr. 294-296)  This claim was also denied, and Plaintiff attended a hearing in front of ALJ Robert Stalker on July 11, 1996.  (Tr. 81-

117) ALJ Stalker acknowledged that the claimant suffered from sever post laminectomy back pain, but found against Plaintiff's claim after hearing from Elizabeth Pasikowski, a Vocational Expert, who testified that there were over 10,000 jobs in the regional economy that a person with Plaintiff's limitations could perform. (Tr. 19-21) The SSA Appeals Council upheld ALJ Stalker's decision.

In response to the unfavorable decision, Plaintiff brought a civil action in district court, where the case was remanded back to the ALJ to further consider Plaintiff's literacy and borderline intelligence with the testimony of a medical expert. (Tr. 467-68) Following the remand from the district court, Plaintiff appeared for a hearing in front of ALJ William J. Musseman on August 18, 1999. In a decision dated November 17, 1999, ALJ Musseman wrote that within the framework of the Medical-Vocational Rule 201.18, Table No. 1 of Appendix 2, Subpart P of Regulation No. 4, the claimant was able to perform jobs that exist in the economy and was therefore not disabled, thus issuing an unfavorable decision. (Tr. 546) Plaintiff filed a request for review with the Appeals Council, which then remanded the case back to the ALJ for further proceedings including testimony from a medical expert, as required by the initial remand order from the district court. (Tr. 561)

ALJ Musseman held a second hearing on December 6, 2002, where Plaintiff presented additional testimony and the ALJ heard expert medical testimony from Dr. Robert E. Fritzen, a clinical psychologist, who testified that Plaintiff has borderline intelligence and is "functionally illiterate." (Tr. 661-66) In a decision dated February 18, 2003, ALJ Musseman issued another unfavorable decision. (Tr. 455-456) He adopted Dr. Fritzen's conclusion that Plaintiff is functionally illiterate, however because Plaintiff has been able to perform in a limited manner as far as his literacy, ALJ Musseman concluded that he is able to communicate well in the English

language and properly meets the requirements of medical-vocational rule 201.18. This determination leads to the ultimate conclusion the Plaintiff is not disabled. (Tr. 454)

The Appeals Council issued a decision affirming ALJ Musseman's unfavorable decision on January 28, 2005. This decision clarified that although Plaintiff has been labeled "functionally illiterate," this does not fit into the standard of illiteracy defined by the regulations and is not the standard used to evaluate a claimant's literacy level. (Tr. 439) After reviewing all the evidence in the record, the Appeals Council concluded that Plaintiff is not illiterate, and does not qualify for disability benefits. (Tr. 440)

After receiving the Appeals Council's unfavorable decision, Plaintiff now seeks judicial review.

### B.  Plaintiff's Background – Education and Work History

Born September 19, 1947, Plaintiff's age at the time of the second application was 47 years old, which is classified under the regulations as a younger individual age 45-49. He has a limited education, having dropped out of school before completing ninth grade. (Tr. 95) He supplemented that education by attending Higgins Lake Adult Community Education in 1996. (Tr. 622) Plaintiff's past relevant work history consisted of unskilled, heavy labor working as a garbage truck driver and trash collector. (Tr. 328-30)

### C.  Literacy Evaluations

Thomas L. Seibert, an examiner with the Clinical Consulting Company evaluated Plaintiff on May 20, 1992. His performance on the Wechsler Adult Intelligence Scale-Revised and the Wide Range Achievement Test-Revised revealed a reading comprehension level of sixth grade and a spelling grade level of less than third. The test results indicate that Plaintiff functions in the borderline range of intellectual ability, and that he has severe learning problems. (Tr. 222)

Seibert noted that he has extremely poor reading and spelling skills (Tr. 221), and that he will have a difficult time understanding complex instructions. However, "he has the intellectual potential to improve all of his academic skills to at least the seventh grade level of achievement." (Tr. 223) Despite the limitations, Seibert did not indicate that Plaintiff is completely illiterate.

At his first hearing in front of ALJ LaFalce, Plaintiff testified that he passed a written exam to receive his commercial driver's license, which he had to read and answer more than 10 written questions. (Tr. 30) He testified that he can read and write very little, for example, he can read a newspaper "if the words are not overly big" and he can write a phone message to his wife that she may be able to read, but that would not be correct. (Tr. 29) In a letter to the court dated June 20, 1996, Carol Creed, Plaintiff's wife, indicated that she cannot always understand the messages Plaintiff writes for her because they are not correct. (Tr. 392)

In two of Plaintiff's daily activity sheets his wife recorded that at one point during the day he read a book (Tr. 255, 257) and in another daily activity sheet she recorded that Plaintiff read the newspaper. (Tr. 396)

During the March 3, 1993, hearing with ALJ LaFalce, Plaintiff testified that he worked with a tutor two days a week to improve his reading and spelling skills, but that he could not write unless he had something to copy. (Tr. 59) Plaintiff indicated on the vocational report from January of 1995 that his wife fills out all paperwork and forms for him because he is unable to do so himself. (Tr. 333)

Plaintiff attended Adult Education from September of 1995 to May of 1996, and completed the four day a week, six hour a day program from beginning to end. (Tr. 98-99) His final grade report from Higgins Lake Community Education on May 15, 1996 denotes that Plaintiff earned a "B" in reading improvement, on a scale where "B" stands for "good." (Tr. 622)

During his first hearing in front of ALJ Musseman on August 18, 1999, Plaintiff again testified to having passed a written driver's test on his second try, having the ability to read newspaper articles with the help of his wife, as well as the ability to determine the price of a telephone or electric bill, although he said he could not interpret the details of the charges on a bill, nor could he write out a check. (Tr. 647-52)

Plaintiff went to Beacon Rehabilitation Services on February 28, 2000 for a vocational assessment under the direction of Ronald T. Smolarski, Rehabilitation Counselor and Disability Examiner. Plaintiff's score on the Industrial Reading test demonstrated an ability in the very low range, where performance is assessed based on client's level of ability among a norm group based on the general working population. (Tr. 609-10) In his evaluation report, Smolarski wrote, "Based on this testing, impact on placement is severe. This individual's vocational handicap places a severe restriction on his ability to obtain and maintain employment in the competitive labor market, where reading (decoding and comprehension) is required and the use of spelling is a requirement." (Tr. 611) While this report indicated that Plaintiff's difficulty with reading and writing would severely restrict his employment opportunities, he did not say Plaintiff is completely illiterate.

## IV.  ANALYSIS

The disputed issue in this case is whether or not Plaintiff is illiterate, as defined by the Social Security regulations. Because this court cannot make the decision *de novo*, we look to ALJ Musseman's decision regarding Plaintiff's literacy and must determine whether the ALJ's findings are supported by substantial evidence and if he applied the proper legal standards.

It is the decision of this court that substantial evidence does support ALJ Musseman's findings. For example, although Examiners Seibert and Smolarski wrote of Plaintiff's

limitations, neither of them explicitly stated that Plaintiff is completely illiterate. The fact that Plaintiff was able to pass a written commercial driver's test on his own in addition to testifying that he is able to interpret telephone and electric bills demonstrates that there is sufficient evidence on record supporting ALJ Musseman's decision. (Tr. 648, 652)

Additional evidence in favor of the ALJ's findings can be found in Plaintiff's daily activity records. It is documented that on two separate occasions he sat down and read a book. (Tr. 255-57) Another time he read the newspaper, commenting on the price of items listed in advertisements and the educational requirements to find a job. (Tr. 396)

Plaintiff's participation in the Higgins Lake Adult and Community Education Program along with his successful completion of the reading improvement course, receiving a "B" suggests that he is not illiterate. (Tr. 622) Examiner Seibert's observation that "He has the intellectual potential to improve all of his academic skills to at least the seventh grade level of achievement" (Tr. 223) also suggests that Plaintiff does not lack the skills nor the intelligence needed to meet the requirements of literacy as defined by the regulations. Additionally, when ALJ Stalker asked Plaintiff if his lower education level was causing problems in finding a job, Plaintiff denied that and said it was because of the restrictions his back injury caused. (Tr. 104)

The record also indicates that Plaintiff submitted grammar school records indicating that he achieved a fifth grade reading level in 1960 while he was in sixth grade, and that in October of 1995 he took the level 2 adult basic learning examination, with results specifying that his reading comprehension was equivalent to the 5th grade level. (Tr. 440) These facts, in conjunction with the other evidence presented are significant enough to say that ALJ Musseman's decision is supported by substantial evidence. Whether or not there is also significant evidence to prove

that Plaintiff is illiterate is not at issue because of the standard of review, which shows such strong deference to decisions made by administrative law judges.

With regards to whether or not ALJ Musseman applied proper legal standards, this court is of the opinion that he did. Although Dr. Fritzen, the medical expert testified that Plaintiff is "functionally illiterate," functionality is not the standard used in determining the literacy of a claimant in a Social Security Disability case. The proper standard from the regulations is found in 20 CFR 404.1564: Illiteracy means the inability to read or write. Plaintiff is not illiterate because he does not completely lack the ability to read or write. Therefore, ALJ Musseman properly applied section 201.18 of the grids, which indicates that a younger individual, age 45-49, with a limited education—at least literate and able to communicate in English, with unskilled or no previous work experience is not disabled.

## V.  CONCLUSION

For the reasons stated above, the court recommends that the district court grant the Commissioner's motion for summary judgment in her favor. The ALJ's determination was supported by substantial evidence that Plaintiff's limited education and borderline intelligence did not meet the regulation's standard of illiteracy. While imposing limitations that impaired him from engaging in all forms of work, these limitations do not exclude him from the ability to perform other substantial gainful activity in the regional economy. The Plaintiff's motion for summary judgment should therefore be denied, and dismissed with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

|  |  |
|---|---|
|  | s/Virginia M. Morgan |
|  | VIRGINIA M. MORGAN |
| Dated:  December 8, 2005 | UNITED STATES MAGISTRATE JUDGE |

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record and the Social Security Administration via the Court's ECF System and/or U. S. Mail on December 8, 2005.

                                                s/Jennifer Hernandez
                                                Case Manager to
                                                Magistrate Judge Virginia M. Morgan