**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

BRUCE A. CREED,

        Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

CIVIL CASE NO. 05-71875
HON. MARIANNE O. BATTANI

_____/

**OPINION AND ORDER ADOPTING
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     INTRODUCTION**

Plaintiff Bruce A. Creed brings this action under 42 U.S.C. § 405(g) challenging a final decision of defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under sections 216(I) and 223 of the Social Security Act. The case was referred to Magistrate Judge Virginia M. Morgan pursuant to 28 U.S.C. § 636(b)(1)(B) to review cross-motions for summary judgment. The Magistrate Judge issued a Report and Recommendation ("R&R") on December 8, 2005, recommending that Plaintiff's motion for summary judgment be denied, and that Defendant's motion for summary judgment be granted.

Plaintiff first filed an application for Social Security Disability Insurance Benefits in 1991, due to lumbar disc disease (Tr. 118-21, 151). Plaintiff attended hearings on August 5, 1992, and again on March 3, 1993, in front of administrative law judge ("ALJ") John LaFalce, (Tr. 23-54, 55-80). In a decision dated March 24, 1993, the ALJ found that Plaintiff was not

disabled because he could perform a significant number of light jobs in the economy, despite his severe back impairment. (Tr. 260-65). Plaintiff filed suit in federal district court, and in a decision dated June 22, 1994, the court affirmed the ALJ's decision. (Tr. 276-92). Because he did not appeal the district court's decision, the ALJ's determination that Plaintiff was not disabled through March 24, 1993, *res judicata* bars relitigation of that decision. (Tr. 450).

Plaintiff filed for benefits again on October 7, 1994, again alleging that he was disabled due to a low back impairment (Tr. 294-96, 320). This claim was heard in front of ALJ Robert Stalker on July 11, 1996. (Tr. 81- 117). ALJ Stalker acknowledged that the claimant suffered from sever post-laminectomy back pain, but found against Plaintiff's disability claim after hearing from Elizabeth Pasikowski, a Vocational Expert (VE). (Tr. 19-21). The VE testified that there were over 10,000 jobs in the regional economy that a person with Plaintiff's limitations could perform. Id. The Social Security Administration Appeals Council ("Appeals Council") upheld ALJ Stalker's decision. However, after judicial review, the district court found that ALJ Stalker did not adequately consider Plaintiff's literacy and borderline intelligence, and remanded the case for further administrative proceedings and a new decision. (Tr. 467-68).

Following the district court remand, Plaintiff attended a supplemental hearing before ALJ William J. Musseman on August 18, 1999. (Tr. 640-60). On November 17, 1999, ALJ Musseman issued a decision finding that Plaintiff: (1) could perform the physical demands of sedentary work that provided a sit/stand option; (2) was limited mentally to simple, non-complex tasks and jobs that required no written instructions, no writing, and no dealing with money; and (3) fell within the framework of the Medical-Vocational Rule 201.18, and was able to perform a

significant number of jobs that exist in the economy, and therefore, was not disabled prior to his date last insured. (Tr. 544-48).

Plaintiff filed a request for review with the Appeals Council, which then remanded the case back to the ALJ for further proceedings. In its Remand Order, the Appeals Council instructed the ALJ to obtain the testimony of a medical expert and further consider Plaintiff's literacy and borderline intelligence. (Tr. 561-62).

A second hearing in front of ALJ Musseman was held on December 6, 2002. (Tr. 661). Plaintiff presented additional testimony and the ALJ heard medical testimony from Dr. Robert E. Fritzen. (Tr. 664). Dr. Fritzen, a clinical psychologist, testified that Plaintiff has borderline intelligence and is "functionally illiterate." (Tr. 664-66). ALJ Musseman issued another decision on February 18, 2003, that was unfavorable for Plaintiff. (Tr. 455-456). He adopted Dr. Fritzen's conclusion that Plaintiff is "functionally illiterate." (Tr. 453). However, the ALJ also found that Plaintiff is able to understand and communicate well in the English language, express himself appropriately, and possesses a limited ability to read and write. (Tr. 454). ALJ Musseman concluded that Plaintiff meets the requirements of medical-vocational rule 201.18. Id. A prerequisite to applying rule 201.18 is the finding that Plaintiff does not meet the definition of "illiteracy" found in 20 C.F.R. § 404.1564. The ALJ found Plaintiff's claims regarding his inability to read not fully credible due to Plaintiff's own testimony regarding the level of reading and writing he is able to do. Id. This determination ultimately leads to the conclusion that Plaintiff is not disabled, even though Plaintiff suffered from a severe impairment and was unable to perform his past relevant work. (Tr. 454-56).

Plaintiff appealed this decision to the Appeals Council. After receiving written exceptions to ALJ Musseman's decision on March 18, 2003, the Appeals Council issued a decision affirming ALJ Musseman's decision on January 28, 2005. (Tr. 438-441). While adopting the majority of the ALJ's decision, the Appeals council clarified that, although Plaintiff has been labeled "functionally illiterate," he does not meet the standard of "illiteracy" set forth in the regulations. (Tr. 439-440). After reviewing all the evidence in the record, the Appeals Council concluded that Plaintiff is not illiterate, and does not qualify for disability benefits. (Tr. 440). Plaintiff filed for judicial review of the final decision on May 11, 2005.

In the R&R, the Magistrate Judge found that the ALJ adequately supported his findings and decision to deny DIB to Plaintiff. Specifically, the Magistrate Judge found that ALJ Musseman applied proper legal standards for determining whether Plaintiff was illiterate under the regulations, and that there was substantial evidence to support the ALJ's finding that Plaintiff did not meet that standard.

On January 3, 2006, Plaintiff filed Objections to the R&R. Plaintiff's first objection is that the Appeals Council did not render a "new, independent decision based on the entire record" required by 20 C.F.R. § 404.984 because the Council did not hear live testimony from Plaintiff. Plaintiff's next objection is that the ALJ's decision was not based on substantial evidence in the record, and that there is no evidence to contradict Plaintiff's testimony that he guessed on his commercial driver's license exam, that the Magistrate Judge discounted Plaintiff's testimony because she did not like it, and that Plaintiff cannot read or understand an inventory list.

For the reasons stated below, the Court ADOPTS the Magistrate Judge's R & R.

**II.    STANDARD OF REVIEW**

A district court must conduct a *de novo* review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." Id. The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." U.S. v. Shami, 754 F.2d 670, 672 (6th Cir. 1985). Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[] that the district judge would be the final arbiter" of a matter referred to a magistrate judge. Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

Judicial review in a social security appeal is limited to determining whether there is substantial evidence supporting the ALJ's decision and whether the judge applied the correct legal standards in reaching that decision. Elam v. Comm'r of Soc. Sec., 348 F.3d 124,125 (6th Cir. 2003), 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If substantial evidence supports a denial of benefits, that decision is not subject to reversal, even if the reviewing court determines that substantial evidence supports a contrary decision. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

When determining whether the decision is supported by substantial evidence, the reviewing court must take into consideration the entire record, including "whatever in the record

fairly detracts from its weight." Mullen, 800 F.2d at 545 (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1971)). However, the court may not review the evidence *de novo*, make determinations of credibility, or weigh the evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). Consequently, the substantial evidence standard accords "considerable latitude to administrative decision makers," as "[i]t presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." Mullen, 800 at 545 (citations and internal quotations omitted).

### III.   STATEMENT OF FACTS

The Court adopts the detailed recitation of facts contained in the Magistrate Judge's R & R, as the only source of contention is whether Plaintiff is illiterate as defined by the regulations, but highlights the following specific portions of the record because of the limited nature of the objections.

Thomas L. Seibert, an examiner with the Clinical Consulting Company evaluated Plaintiff on May 20, 1992. His performance on the Wechsler Adult Intelligence Scale-Revised and the Wide Range Achievement Test-Revised revealed a reading comprehension level of sixth grade and a spelling grade level of less than third. The test results indicate that Plaintiff functions in the borderline range of intellectual ability, and that he has severe learning problems. (Tr. 221-22). Seibert noted that he has extremely poor reading and spelling skills, an inability to read want ads, and that he will have a difficult time understanding complex verbal instructions. (Tr. 221, 223). However, Seibert did not indicate that Plaintiff is completely illiterate.

At his first hearing in front of ALJ LaFalce, Plaintiff testified that he passed a written exam to receive his commercial driver's license, which he had to read and answer more than 10

written questions. (Tr. 30). He testified that he can read and write very little, for example, he can read a newspaper "if the words are not overly big" and he can write a phone message to his wife that she may be able to read, but that no one else would be able to understand. (Tr. 29). In a letter to the court dated June 20, 1996, Carol Creed, Plaintiff's wife, indicated that she cannot always understand the messages Plaintiff writes for her because they are not correct. (Tr. 392).

In two of Plaintiff's daily activity sheets his wife recorded that at one point during the day he read a book. (Tr. 255, 257). In another daily activity sheet she recorded that Plaintiff read the
newspaper, and complained about the prices in the sales ads and the number of jobs that require high school diplomas. (Tr. 396).

During the March 3, 1993, hearing with ALJ LaFalce, Plaintiff testified that he worked with a tutor two days a week to improve his reading and spelling skills, but that he could not write unless he had something to copy. (Tr. 59). Plaintiff indicated on the vocational report from January of 1995, that his wife fills out all paperwork and forms for him because he is unable to do so himself. (Tr. 333).

Plaintiff attended Adult Education from September of 1995, to May of 1996, and completed the four day a week, six hour a day program from beginning to end. (Tr. 98-99). He testified that he had no problems completing the course. (Tr. 99). His final grade report from Higgins Lake Community Education on May 15, 1996, denotes that Plaintiff earned a "B" in reading improvement, where "B" stands for "good." (Tr. 622).

During his first hearing in front of ALJ Musseman on August 18, 1999, Plaintiff again testified to having passed a written driver's test on his second try, having the ability to read

7

newspaper articles with the help of his wife, as well as the ability to determine the price of a telephone or electric bill, although he said he could not interpret the details of the charges on a bill, nor could he write out a check. (Tr. 647-52).

Plaintiff went to Beacon Rehabilitation Services on February 28, 2000, for a vocational assessment under the direction of Ronald T. Smolarski, Rehabilitation Counselor and Disability Examiner. (Tr. 609-12). Plaintiff's score on the Industrial Reading test demonstrated an ability in the very low range, where performance is assessed based on client's level of ability among a norm group based on the general working population. (Tr. 609-10). In his evaluation report, Smolarski wrote, "Based on this testing, impact on placement is severe. This individual's vocational handicap places a severe restriction on his ability to obtain and maintain employment in the competitive labor market, where reading (decoding and comprehension) is required and the use of spelling is a requirement." (Tr. 611). The record also indicates that Plaintiff submitted grammar school records indicating that he achieved a fifth grade reading level in 1960 while he was in sixth grade, and that in October of 1995 he took the level 2 adult basic learning examination, with results specifying that his reading comprehension was equivalent to the fifth grade level. (Tr. 440).

**IV.    ANALYSIS**

In order to establish a compensable disability under the Social Security Act, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §1382(a)(3)(A). The claimant bears the ultimate burden of establishing a disability

within

the meaning of the Social Security Act.  Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993).

Disability claims are evaluated through a five-step sequential process.  20 C.F.R. § 404.1520.  See also Kirk, 667 F.2d at 529.  The burden of proof to show a disability is on the claimant through the first four steps of the process.  If a claimant meets this burden, the fifth step shifts the burden to the Commissioner.  Preslar v. Sec'y of Health and Human Servs., 14 F.3d 1107, 1110 (6th Cir. 1994).  The first step of the process examines whether the claimant is currently engaged in substantial gainful activity.  If the claimant is so engaged, she is not disabled under the guidelines.  The second step examines whether the claimant has a severe impairment which significantly limits her ability to perform work-related functions.  Id.  If a severe impairment is found, the third step requires comparison of the impairment to those impairments listed in Appendix I, 20 C.F.R. § 404, Subpt. P (1981), to determine if, on the medical evidence alone, the claimant is disabled.  Id.  If the claimant is not disabled under the third step, the fourth step requires a determination of whether the claimant can perform relevant past work.  If claimant cannot perform relevant past work, the fifth step shifts the burden to the Commissioner to establish that the claimant has transferable skills which enable her to perform other work in the national economy.  Id.

In the present case, the question before the Court is whether Plaintiff is disabled under step five; that is, whether Plaintiff is illiterate under the regulations, and thus, whether Plaintiff has transferable skills that enables him to perform other work in the national economy.  The ALJ

found that, although Plaintiff was functionally illiterate, he was able to communicate and understand English, express himself appropriately, and his claimed complete inability to read or write all but the simplest words and messages was not fully credible. (Tr. 454). Thus, the ALJ found that Plaintiff did not meet the regulations' standards of illiteracy. The ALJ then found that Plaintiff's capabilities were properly classified under Rule 201.18 of the Medical-Vocational guidelines, and thus, Plaintiff was not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Plaintiff's first objection is that the Appeals Council did not render a "new, independent decision based on the entire record" required by 20 C.F.R. § 404.984 because the Council did not hear live testimony from Plaintiff. Plaintiff contends that the Magistrate Judge's R&R cannot stand because it did not review the case in full because the Appeals Council did not meet the proper legal standards in its review.

First, the Magistrate Judge's R&R does not include any proposed findings or recommendations that even tangentially rely on the Appeals Council decision. This Court's review is limited to determining whether the findings of the ALJ are supported by substantial evidence, and whether the ALJ applied the correct legal standards. Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). Therefore, Plaintiff's first objection is beyond this Court's review. Moreover, even if Plaintiff's argument were properly before the Court, Plaintiff cites no authority to support his decision that the Appeals Council decision is not new or independent, in violation of the mandates of 20 C.F.R. § 404.984, if it does not hear new, live testimony from the laintiff. Section 404.984 states:

> (a) General. In accordance with § 404.983, when a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case. The Appeals Council may

assume jurisdiction based on written exceptions to the decision of the administrative law judge which you file with the Appeals Council or based on its authority pursuant to paragraph (c) of this section.  If the Appeals Council assumes jurisdiction of your case, any issues relating to your claim may be considered by the Appeals Council whether or not they were raised in the administrative proceedings leading to the final decision in your case or subsequently considered by the administrative law judge in the administrative proceedings following the court's remand order.  The Appeals Council will either make a new, independent decision based on the entire record that will be the final decision of the Commissioner after remand or remand the case to an administrative law judge for further proceedings.

(b) You file exceptions disagreeing with the decision of the administrative law judge.
> (1) If you disagree with the decision of the administrative law judge, in whole or in part, you may file exceptions to the decision with the Appeals Council. Exceptions may be filed by submitting a written statement to the Appeals Council setting forth your reasons for disagreeing with the decision of the administrative law judge. . . . .
> (2) If written exceptions are timely filed, the Appeals Council will consider your reasons for disagreeing with the decision of the administrative law judge and all the issues presented by your case. If the Appeals Council concludes that there is no reason to change the decision of the administrative law judge, it will issue a notice to you addressing your exceptions and explaining why no change in the decision of the administrative law judge is warranted.  In this instance, the decision of the administrative law judge is the final decision of the Commissioner after remand.
> (3) When you file written exceptions to the decision of the administrative law judge, the Appeals Council may assume jurisdiction at any time, even after the 60-day time period which applies when you do not file exceptions.  If the Appeals Council assumes jurisdiction, it will make a new, independent decision based on its consideration of the entire record affirming, modifying, or reversing the decision of the administrative law judge or remand the case to an administrative law judge for further proceedings, including a new decision.  The new decision of the Appeals Council is the final decision of the Commissioner after remand.

(c) Appeals Council assumes jurisdiction without exceptions being filed.  Any time within 60 days after the date of the decision of the administrative law judge, the Appeals Council may decide to assume jurisdiction of your case even though no written exceptions have been filed.  Notice of this action will be mailed to all parties at their last known address.  You will be provided with the opportunity to file briefs or other written statements with the Appeals Council about the facts

>and law relevant to your case. After the briefs or other written statements have been received or the time allowed (usually 30 days) for submitting them has expired, the Appeals Council will either issue a final decision of the Commissioner affirming, modifying, or reversing the decision of the administrative law judge, or remand the case to an administrative law judge for further proceedings, including a new decision.
>
>(d) Exceptions are not filed and the Appeals Council does not otherwise assume jurisdiction. If no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the administrative law judge becomes the final decision of the Commissioner after remand.

Plaintiff filed written objections to the ALJ's decision with the Appeals Council. Thus, it is within the purview of the Appeals Council to: consider Plaintiff's reasons for disagreeing with the decision of the administrative law judge and all the issues presented by your case, and "make a new, independent decision based on its consideration of the entire record affirming, modifying, or reversing the decision of the administrative law judge or remand the case to an administrative law judge for further proceedings, including a new decision." 20 C.F.R. § 404.984(b)(3). Thus, nothing in the regulations controlling the Appeals Council's authority and procedures dictates that a plaintiff be able to present new testimony. Rather, § 404.984(b)(3) envisions, and mandates, that the Appeals Council consider the entire record of the proceedings before the ALJ to base its decision on whether to affirm, modify, or reverse the ALJ's decision, or to remand the case back to the ALJ for further proceedings. Therefore, the Court finds Plaintiff's first objection to be without merit.

  Plaintiff's next objection is that the ALJ's decision was not based on substantial evidence in the record; i.e., that there is no evidence to contradict Plaintiff's testimony that he guessed on his commercial driver's license exam, that the Magistrate Judge discounted Plaintiff's testimony because she did not like it, and that Plaintiff cannot read or understand an inventory list.

Plaintiff

cites objections to specific findings in the R&R, as well as, objecting generally that there is not substantial evidence to support the finding that Plaintiff is literate under the regulations.

     Plaintiff's first specific objection to the R&R, is the fact that the Magistrate Judge pointed out that Thomas L. Seibert, an examiner with the Clinical Consulting Company, wrote in Plaintiff's evaluation that he had the intellectual potential to improve his academic skills to the seventh grade level.  Plaintiff contends that the Magistrate Judge's use of this statement to support a finding that Plaintiff is illiterate is improper.  The Court would agree with Plaintiff's position, if the Magistrate Judge had done this.  However, the Magistrate Judge merely recited this in a subpart to the statement of facts, and not as a basis to find that Plaintiff literate under the regulations.  Nowhere in the analysis section of the R&R, where the Magistrate Judge determines if the ALJ's decision to deny benefits was supported by substantial evidence, does the Magistrate Judge use that statement in Plaintiff's evaluation to support the ALJ's decision to find him literate.

     Next, Plaintiff contends that there is unrebutted evidence that Plaintiff guessed on his commercial driver's license examinations, his inability to read utility bills, and that the Magistrate Judge improperly cited Plaintiff's reading a book and a newspaper, without naming the specific book or newspaper, or his level of comprehension, to support the finding that Plaintiff was literate.  Plaintiff goes on further to say that there is no evidence that he was successful in his attempts to read, or the relationship between those attempts and his ability to interpret inventory lists.

Plaintiff's objections to the use of his "attempts" at reading a book and newspaper without specifically naming those sources is without merit. Plaintiff's wife, while filling out his daily activities worksheet, twice wrote down that Plaintiff read her book and the morning newspaper. (Tr. 255, 257, 396). Moreover, Plaintiff's wife wrote down that Plaintiff "goes through sales adds [sic] bitches about prices." (Tr. 396). And, "gets back up & finishes rest [sic] of paper. Bitched about jobs needed [sic] high school diploma or better." (Tr. 396). This Court agrees with the Magistrate Judge that Plaintiff's reading of a newspaper and book are highly relevant to the determination of whether he is illiterate. Further, even if the specific book or newspaper was not identified, the fact that Plaintiff showed a high level of comprehension of the sales and help wanted ads is also highly relevant to that determination.

Finally, the Court must determine if there is substantial evidence to support the ALJ's determination that Plaintiff was not illiterate under the regulations. When conducting such a review, it bears repeating that the court may not review the evidence *de novo*, make determinations of credibility, or weigh the evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). The substantial evidence standard accords "considerable latitude to administrative decision makers," as "[i]t presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." Mullen, 800 at 545. Further, if substantial evidence supports a denial of benefits, that decision is not subject to reversal even if the reviewing court determines that substantial evidence supports a contrary decision. Id. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk., 667 F.2d at 535. Thus, even if this Court were to find that substantial evidence existed in the record

14

to support a determination that Plaintiff is illiterate, under the regulations, that would not be sufficient to

overturn the ALJ's decision unless there also was an absence of substantial evidence to determine that Plaintiff was not illiterate.

The Court finds that there is substantial evidence to support the ALJ's determination that Plaintiff's abilities exceeded the standard for illiteracy found in the regulations.

> Illiteracy means the inability to read or write.  We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name.  Generally, an illiterate person has had little or no formal schooling.

20 C.F.R. § 404.1564(b)(1).  Plaintiff's daily activity logs, grammar school records, Adult Education records, and testimony, as outlined above, offer substantial evidence to the ALJ's determination that Plaintiff does not meet the standards in § 404.1564(b)(1).  Therefore, the application of Rule 201.18 of the Medical-Vocational guidelines was appropriate because Plaintiff is at least literate under the regulations, and Plaintiff is not entitled to benefits.

## IV.    CONCLUSION

Accordingly, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation, **DENIES** Plaintiff's Motion for Summary Judgment, and **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                                s/Marianne O. Battani
                                                MARIANNE O. BATTANI
                                                UNITED STATES DISTRICT JUDGE

DATED: **March 10, 2006**

## CERTIFICATE OF SERVICE

Copies of this Order were served upon Richard P. Wagner and Janet Parker on this date by ordinary mail and/or electronic filing.

                                                s/Bernadette M. Thebolt
                                                DEPUTY CLERK